Nichols, C. J.
The court of appeals of Hamilton county held in the first proposition of the syllabus of the case at bar as follows: “An allowance of alimony to a wife cannot be based on future personal earnings or wages of the husband, and where the allowance is made in connection with a decree for divorce to the wife on account of the aggression of the husband, it must be based on *144 property owned by him at the time the decree is granted.”
This conception of the law of alimony is somewhat startling\ — and if such construction of the alimony statute is the necessary one, it would follow that erroneous judgments to the number of tens of thousands have been rendered and enforced in this state.
Let us give a concrete illustration of the effect of this proposition of law — the divorced wife of a man of property is to be awarded support; but the divorced wife of a man without property in possession, but earning say one hundred dollars a week, is to go hence without relief..
It would follow that the fortunate wife so divorced (fortunate in a financial sense only) could fasten upon her former husband, if he had accumulated but a pittance of property, an obligation to support her during his lifetime, in the form of weekly payments in specified sums, unless changed circumstances of either of the parties might intervene, although the sum total of these payments might in the passing years exceed many times the whole- value of the husband’s estate at the time of the decree.
On the other hand, the doubly unfortunate wife of the husband in fault, without property at time of the decree, could not receive alimony either iii gross or in divisional payments, although the husband was capable of earning, and in fact receiving, a handsome salary or wages.
Thus this state of the law would operate to favor the derelict propertyless husband by making *145 a virtue of his very shortcomings, perchance in respect to the very causes that gave ground for divorce; for all too frequently the fact that the party in fault is without property is clearly associated with conduct that directly led up to the necessity of separation.
The seriousness and obvious injustice of such a situation is at once apparent, especially when we contemplate the very great number of worthy women who would thereby be deprived of a remedy which the law supposedly holds out to them.
Permanent alimony, it is true, is purely a creature of statutory creation, but it has been defined as late as the eighty-third Ohio State Report, at page 101, in the case of Fickel et al. v. Granger, as being “an award by the court upon considerations of equity and public policy and * * * founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault.”
It is a known fact that the divorce courts, while all too frequently resorted to by folks of property, are mostly occupied in solving the domestic difficulties of those not blessed with the possession of this world’s goods, and it certainly is to be granted that a good woman, who has faithfully kept the marriage vows, but who has been denied the support of her husband, should in a sense be the ward of the court.
It would be difficult, it seems to us, to defend the equity of the situation or to commend as really *146 enlightened a public policy which would decree that the erring husband with property should be made to fulfill this obligation, at once moral as well as legal, while another, .just as much sinning against the law of both God and man, who made good wages or salary, as the case might be, but who squandered instead of saved, should be released.
There is no question of the effect of the decision of the court of appeals. It holds squarely that the court is absolutely without power to render any judgment for alimony whatever, unless the aggrieved wife can show that her husband is the owner of property.
Reasonable men must agree that such a distinction is manifestly opposed to a public policy of enlightenment and' does violence to every principle of equity and fairness.
The question remains: Is such an unfortunate construction of the statute imperative ? It must be granted that if any other construction of the alimony statute is possible, it should be adopted.
So much of Section 11990, General Code, as is to be construed is: “The court shall * * * allow such alimony out of her husband’s property as it deems reasonable, having due regard to property which came to him by marriage and the value of his real and personal estate at the time of divorce.”
The contention of those who hold that no alimony can be allowed unless there is property in possession is that paramount importance should be given to the phrase “out of her husband’s property,1” going so far as to hold that this is the exclusive source from which alimony can be awarded.
*147 A second contention, very likely correct, is that future earnings, such as salary and wages, are not property within the strict, technical, legal definition of the term.
We are not of the opinion that the phrase “out of her husband’s property” is entitled to receive such controlling force. Were it entirely withdrawn from the statute, it would in no wise limit or weaken the force of the law or power of the court. It was of far greater importance to provide that alimony should be allowed than to provide the method, manner or source of payment. It is essentially directory in its nature, and its inclusion in the section is to be explained more especially by that which follows, where the expression “having due regard” is employed.
“Having due regard” is clearly a directory clause and not of mandatory or all-controlling influence. “Having due regard” does not mean that other facts, circumstances or conditions can not be entertained. Quite the contrary. It is a direction simply to the effect that the court in fixing the alimony must not overlook or fail to take into account the property which the wife may have brought into the common fund, nor must the court fail to consider the value of the real and personal estate of the husband at the time of the decree. Manifestly these are proper considerations and should have “due weight,” but certainly it is not to be held that exclusive consideration should be given to them.
For instance, a man with five thousand dollars in property, with an earning capacity of twenty dollars a week, would on the face of things be much *148 less able to pay substantial weekly installments of alimony than one of no property, but who at the time of the decree is making one hundred dollars a week.
Kent, in volume one of his Commentaries on American Law (13 ed.), page *461, says: “In the exposition of statutes, * * * the intention of the lawgiver * * * will always prevail over the literal sense of terms * * * and the reason and intention of the lawgiver will control the strict letter of the law. * * * The intention is to be taken or presumed, according to what is consonant to reason and good discretion.”
This rule of construction would certainly commend itself as a model of good sense and inherent justice, and guided by such rule we are quite unwilling to impute to the general assembly an intention, in cases where parties are in equal fault, to hold the one to the sacred obligation of the law and permit the other to escape; for the illogical reason that the one has some property and the other none, although having something of far greater value, the ability to earn a good salary or wages.
Measuring the statute under consideration by the yardstick of what is “consonant to reason and good discretion,” we are of the opinion that it was the intention of the general assembly, when it granted to the courts the power to “allow such alimony,” not necessarily to preclude the court from giving consideration to the ability of the husband to earn money.
*149 Judge Thurman, in the case of Admx. of Tracy v. Admr. of Card, 2 Ohio St., 431, says at page 441: “On the one hand, the judiciary should be careful not to make its office of expounding statutes a cloak for the exercise of legislative power, on the other hand it is equally bound not to stick in the mere letter of the law, but rather to seek for its reason and spirit in the mischief that required a remedy, and the general scope of the legislation designed to effect it.” Judge Thurman, in the same case, quotes Lord Coke, as follows: “The equity of a statute is a construction made by the judges, that cases out of the letter of a statute, yet being within the same mischief, or cause of the making of the same, shall be within the same remedy that the statute provideth.”
It is also said in the Tracy case that “The words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy. It is by no means unusual, in construing remedial statutes, to extend the enacting words beyond their natural import and effect, in order to include cases within the same mischiefs.” (Quoting Dwarr. on Stats., 734, 735.)
When the statute providing for the award of alimony was enacted, the mischief that required a remedy was the want of a law compelling a husband from whom a wife was divorced to provide permanent support. The mischief in the case of a wife of a husband without property in possession was just as manifest as in the case of the husband with property, and we cannot lead ourselves to believe that it was the intention of the general assem *150 bly to classify women so as to make certain a remedy in one aspect of the case and deny it in the other.
«The award of the alimony is one thing, its recovery on execution by the wife is another, and must be left to take care of itself, with such assistance as the law of execution provides.
We are altogether in agreement with the court of appeals in its holding to be found in the third proposition of the syllabus of the case at bar, that Section 11991, General Code, authorizes a decree of alimony in weekly payments of specified sums.
The, language of this section, that the alimony as allowed may be made “payable either in gross or installments, as the court deems equitable,” clearly. grants the power of providing weekly or monthly payments of specified sums.
The fact that this section, which at the time of the passage of the alimony act was a part of old Section 5699, Revised Statutes of Ohio, and separated from it by the codifying commission, provides for the payment of alimony in installments, furnishes an added reason for the holding we have made, that the ability to earn wages or salary, generally payable in .installments, is an element property to be considered by the court in fixing alimony.
The court of appeals reversed the judgment of the court of insolvency, notwithstanding its view of the law of the case, for. the reason that the record of the case did not affirmatively show that the husband at the time of the original decree was without property.
*151 Our judgment, therefore, while founded on an entirely different conception of the law, will be one of affirmance of the court of appeals, and the case will be remanded to the court of insolvency of Hamilton county with directions to proceed in accordance with this finding.

Judgment affirmed and cause remanded.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.